UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03-CV-194-EHJ

CHRISTOPHER NELSON                                                                    PLAINTIFF

v.

MATTHEW RIDDLE AND THOMAS MOORE,
Individually and in their Official Capacities, and
CITY OF CADIZ POLICE DEPARTMENT                                          DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court upon defendants' Motion for Summary Judgment (DN 23), to which the plaintiff has responded (DN 28) and the defendants have replied (DN 30). For the reasons that follow, the Court declines to grant summary judgment at this time.

## BACKGROUND

Christopher Nelson filed this 42 U.S.C. §1983 action against Matthew Riddle, Thomas Moore and the City of Cadiz Police Department because he claims that his Fourth Amendment right to be free from an arrest without probable cause was violated. In addition, he has alleged the state law torts of wrongful arrest and malicious prosecution.

Christopher Nelson was a 23 year old white male and recent graduate of the University of Illinois who had returned to the Western Kentucky area to live with his parents and search for employment in August of 2002 at the time of the subject incident. On the night of August 21/22, 2002, Nelson was returning from Hopkinsville, Kentucky to his parents' home in Cadiz, Kentucky via U.S. Highway 68 when he passed two stationary police cars parked along U.S. Highway 68, just west of the U.S. Highway 68 and Interstate 24 intersection. He had been in Hopkinsville that night, shopping at Wal-Mart and visiting with friends.

According to Officers Riddle and Moore, they both observed Nelson's vehicle which did not appear to have a license plate. Officer Riddle followed Nelson's vehicle in order to ascertain whether it had a properly illuminated license plate when Nelson's vehicle allegedly accelerated and "cut the curve" on Rocky Ridge Baptist Church Road. Riddle claims that he then turned on his blue lights and siren, shined a spotlight into the back glass of Nelson's vehicle, and commenced a high speed chase on two concededly treacherous country roads. In a straight stretch on Rocky Ridge Baptist Church Road, Riddle says he came within three car lengths of Nelson's vehicle. Nelson did not stop, but continued to negotiate a turn right onto Old Hopkinsville Road. Officer Riddle missed the turn, but says he maintained a continuous visual of Nelson's vehicle. He reports seeing Nelson's rear lights go out, but after a short distance come back on. Nelson turned into his parents' driveway, and Riddle followed soon thereafter, only then noting that Nelson's vehicle possessed an Illinois license plate.

Nelson's account of these events differs dramatically. Nelson claims that he was traveling below the marked speed limit at 53 miles per hour when he passed two police cars parked along U.S. Highway 68 near Interstate 24. Nelson claims that he never saw Officer Riddle following him. It was only after Officer Riddle pulled in behind him in his parents' driveway, (some 30 to 45 seconds after Nelson had pulled into the driveway) that he saw Officer Riddle. Nelson had already exited his vehicle and was walking toward his house when he heard yelling and turned to see Officer Riddle pointing a gun at him. Nelson estimates that the distance between where he initially saw the two police cars on U.S. Highway 68 and his parents' house is approximately two miles.

Officer Riddle arrested Nelson, performed four field sobriety tests upon him (two of which were negative and the other two ambiguous), searched his car but found no contraband, and

subjected him to both blood and urine testing for alcohol and drugs before placing him in jail. Nelson was charged with DUI and fleeing a police officer.  The DUI charge was subsequently dropped as the drug and alcohol tests were negative.  The fleeing a police officer charge was dismissed after a six-month pretrial diversion.

Both plaintiff and defendants have enlisted law enforcement experts to provide testimony regarding the legality of the of the stop.  Defendants' expert Bobby Earl Ricks opines that the officers' belief that there was no license plate on Nelson's car is, at a minimum, reasonable suspicion to detain.  Ricks also concludes that Officer Riddle had probable cause to believe that Nelson was attempting to elude him and that Nelson was driving under the influence, both of which justified arrest.  In contrast, plaintiff's expert Robert Crouse believes that a high speed chase and subsequent arrest were not justified by the alleged license plate violation, and that the officers had only reasonable suspicion that Nelson had been driving under the influence, not probable cause to arrest for DUI.  Additionally, Crouse questions whether Officer Riddle could have formulated probable cause to believe that Nelson was attempting to evade.

## ANALYSIS

A Fourth Amendment violation analysis requires evaluation by undertaking an objective assessment of an officer's actions in light of the facts and circumstances then known to him.  The language of the Fourth Amendment proscribes only "unreasonable" searches and seizures, Scott v. United States, 436 U.S. 128, 137, 98 S.Ct. 1717, 1723 (1978).  So long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment, United States v. Trigg, 925 F.2d 1064, 1065 (7th Cir.) as cited in U.S. v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993)(en banc).

A probable cause determination is fact-dependent and will turn on what the officer knew at the time he made the stop, and should be determined on the totality of the circumstances, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  The initiating factor in this series of unfortunate events was the officers' belief that Nelson's car did not have a license plate when it passed by them on U.S. Highway 68.  Officer Riddle attempted to catch up to Nelson to determine whether his belief regarding the license plate was in fact true.  At some point during his attempt to catch up and make this determination, Officer Riddle allegedly observed acceleration and a "cut curve" on the part of Nelson, which prompted him to turn on his blue lights and initiate a high speed pursuit.  Despite coming within three car lengths of Nelson's vehicle, Officer Riddle claims not to have seen a license plate, though that is the offense he allegedly suspected.

Taking all of the facts in favor of the plaintiff, there appear to be genuine issues of material fact as to whether Officer Riddle lacked probable cause to stop Nelson's vehicle.  While it is true that Kentucky law prohibits the operation of a motor vehicle without an illuminated rear license plate, neither Officer Moore nor Officer Riddle could determine whether Nelson's car was in fact lacking a proper license plate without further investigation.  At that point, Officer Riddle could only have had reasonable suspicion that a non-moving traffic violation was occurring.  The additional factors cited by Officer Riddle as justification for the ensuing pursuit include acceleration, cutting a curve, and the ambiguously described erratic driving.

Whether or not Officer Riddle had probable cause to arrest Nelson is properly an issue of fact for the jury, as there is room for a difference of opinion concerning the facts and the reasonable inferences to be drawn from them.

4

Defendant officers also argue that they are entitled to qualified immunity as Nelson has not

established that their conduct violated a clearly established right.  "Police officers performing

'discretionary functions, generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.'" Washington v. Newsom, 977 F.2d 991 at 993 (6th Cir.) *cert. denied*,

113 S.Ct. 1848 (1993).  Qualified immunity is "an immunity from a suit rather than a mere defense

to liability, [thus it is important to resolve] immunity questions at the earliest possible stage in

litigation."  Hunter v. Bryant, 112 S.Ct. 534, 536 (1991).

Washington sets out the procedure for reviewing a qualified immunity issue within the

context of a summary judgment motion:

> When a claim to qualified immunity is raised within the context of a motion for
> summary judgment, the non-movant must allege facts sufficient to indicate that the
> act in question violated clearly established law at the time the act was committed.
> See Dominique v. Telb, 831 F.2d 673, 677 (6th Cir. 1987) . . . . Thus, the plaintiff
> must effectively pass two hurdles when facing a defendant on summary judgment
> who claims qualified immunity.  First, the allegations must "state a claim of violation
> of clearly established law."  Mitchell v. Forsyth, 472 U.S. 511, 526 . . . (1985).
> Second, the plaintiff must present "evidence sufficient to create a genuine issue as
> to whether the defendant in fact committed those acts."  Washington, 977 at 994
> (citing Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992)).

In determining whether law was clearly established at the time defendants acted, this court must

determine whether the violation asserted actually violates the Constitution and then determine

whether the constitutional right violated was a right at the time the actions by the defendants were

taken.  Rich v. City of Mayfield Heights, 955 F.2d 1092 (6th Cir. 1992) (citing Siegart v. Gilley, 111

S.Ct. 1789, 1793 (1991)).

Nelson claims that the officers violated his right not to be arrested without probable cause.

Arrest without probable cause violates the Fourth Amendment, Beck v. Ohio, 379 U.S. 89, 90-91

(1964). This was a constitutionally established right at the time of the events in question. However,

> Arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. [Citation omitted]. The Supreme Court has defined "probable cause" as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988) (citing Michigan v. DeFillippo, 443 U.S. 31, 36-37 (1979)).

Thus, this court must determine whether the facts in the record support a finding of probable cause. "If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant." Id. This inquiry necessarily turns on the circumstances with which the official is confronted, and often on the information that he possesses:

> . . . the district court must consider all the undisputed evidence produced as a result of discovery, read in the light most favorable to the non-moving party. [citation omitted] . . . . [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights. Poe v. Haydon, 853 F.2d 418, 425 (6th Cir.) *cert. denied*, 488 U.S. 1007 (1989).

The question of immunity in the instant case turns on whether a reasonable person in possession of the facts known by Officers Riddle and Moore would believe that the Plaintiff was violating KRS 186.170, 186.990(1). The Court has carefully reviewed the facts of the record and, as discussed herein-above, notes that several factual disputes exist central to the determination of whether Officers Riddle and Moore could have reasonably believed probable cause existed to arrest Nelson at any time during the pursuit and resulting events. Where genuine issues of material fact exist as to whether the defendants actually did commit acts that would violate a clearly established right, then summary judgment on qualified immunity is improper.

## CONCLUSION

For the reasons stated above, the Court declines to grant defendants summary judgment at this time.